## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| KEVIN WILLES | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-12-137 |
| | : | |
| | : | |
| WELLS FARGO BANK, N.A. | : | |
| | : | |
| | : | |

## MEMORANDUM

Plaintiff Kevin Willes brings this action as a bondholder alleging that defendant Wells Fargo breached its duties as indenture trustee, under an indenture with failed sub-prime mortgage lender KH Funding ("KH"). Wells Fargo has filed a motion to dismiss Willes's claims. (ECF No. 30.) For the reasons set forth below, Wells Fargo's motion will be denied.

## BACKGROUND

KH was a Maryland sub-prime mortgage lender and bond issuer. (Am. Compl., ECF No. 20, ¶¶ 5-6; KH 10-KSB Statement, ECF No. 31-8, at 7.)[1] On August 2, 2004, KH entered into an indenture with defendant Wells Fargo under which it issued "Series 3 Notes" and subordinated "Series 4 Notes." (Am. Compl. ¶¶ 5-7.) Plaintiff Kevin Willes is a holder of Series 4 Notes that had, at one time, a value of $630,000. (*Id.* ¶ 9.)

The indenture was made pursuant to the Trust Indenture Act of 1939 ("TIA"), 15 U.S.C. § 77aaa *et seq.*, which it incorporates by reference. (*Id.* ¶ 12; Indenture, ECF No. 31- 2, § 1.3.) Under the indenture, which has been amended several times but not substantively altered, Wells Fargo undertook a variety of duties and obligations as indenture trustee. (Am. Compl. ¶¶ 11-19.)

---

[1] There is a discrepancy between the page numbering of the exhibit and the original SEC filing. Page references here align with the exhibit, not the original document.

These duties include an obligation, in the event of a default, to protect the value of the Notes on behalf of their holders by "exercis[ing] such of the rights and powers vested in it by this [i]ndenture, and us[ing] the same degree of care in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs." (Am. Compl. ¶ 16; Indenture § 7.1(a).) This obligation is triggered only by an "Event of Default," a term formally defined in the indenture that includes any failure by KH to pay interest or principal due on the Notes for a period of 30 days. (Am. Compl. ¶ 15; Indenture § 6.1.) Wells Fargo also had a duty to notify Series 4 noteholders of the existence of any default or Event of Default (Am. Compl. ¶ 15; Indenture § 7.5), and it was empowered to accelerate payment on the notes if an Event of Default occurred (Am. Compl. ¶ 14; Indenture § 6.2.) The indenture further provides that Wells Fargo "may not be relieved from liabilities for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that . . . [it] shall not be liable for any error of judgment made in good faith by a Responsible Officer, unless it is proved that [it] was negligent in ascertaining the pertinent facts." (Am. Compl. ¶ 17; Indenture § 7.1(c).)

KH suffered a series of mounting losses beginning in 2007 and coinciding with the financial crisis. (Am. Compl. ¶¶ 38-47.) KH reported these losses to the SEC. (*Id.*) Beginning with the 2008 10-K it filed on April 15, 2009, KH also reported continuing Events of Default to the SEC. (*Id.* ¶¶ 22-28; KH 10-K Statement, ECF No. 31-12, at 17.) For example, on May 20, 2009, KH reported to the SEC "it was subject to approximately $1.5 million in redemption requests for Series 3 Notes that were past the 30-day grace period." (Am. Compl. ¶ 24.) On December 23, 2009, KH reported "it received notice from Wells Fargo that Wells Fargo had declared an event of default under the Indenture and that Wells Fargo intended to mail notice of such event of default to holders of the Notes." (Am. Compl. ¶ 27.) Wells Fargo had taken no

action with respect to any default up until this date. (*Id.* ¶ 29.) On January 7, 2010, Wells Fargo

notified holders that an Event of Default was occurring. On February 5, 2010, citing its powers

under the indenture, Wells Fargo gave notice it was accelerating the notes because KH "has

defaulted in the payment of principal and interest on the [Notes] . . . for a period of at least 30

days, and, therefore, Events of Default have occurred and are continuing." (*Id.* ¶ 30.)

Subsequently, Willes commenced this action alleging that Wells Fargo breached its

contractual duties to him as third-party beneficiary of the indenture, "by its recurrent failure to

exercise its rights and powers under the Indenture despite its knowledge of repeated and

continuing events of default . . ." and its failure to provide Willes with timely notice of

continuing events of default (*Id.* ¶¶ 61-62.) Willes alleges that he would have been able to

recover more value on his Series 4 Notes had Wells Fargo accelerated sooner or provided him

notice of defaults earlier. (*Id.* ¶ 63.)

## <u>ANALYSIS</u>

The purpose of a motion to dismiss "is to test the legal sufficiency of a complaint' and

not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.2006) (quoting

*Edwards v. City of Goldsboro*, 178 F .3d 231, 243–44 (4th Cir.1999)). To survive a motion to

dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court

assumes the facts alleged in the complaint are true and draws all reasonable factual inferences in

the nonmoving party's favor. *Edwards*, 178 F.3d at 244. "[W]hen a defendant attaches a

document [such as the Indenture] to its motion to dismiss, a court may consider it in determining

whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotations omitted). A complaint need not provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

Willes adequately states a claim for breach of contract as a third party beneficiary of Wells Fargo's agreement with KH. Under the indenture, "except during the continuance of an Event of Default[,]" Wells Fargo's obligations are limited to "those duties . . . specifically set forth in [the indenture] and no others, and no implied covenants or obligations" are to be read into the indenture. (Indenture § 7.1(b).) During an Event of Default, however, this provision does not apply, and Wells Fargo's obligations are not limited to express provisions of the indenture. Instead, Wells Fargo is to be held to a "prudent man" duty of care in determining its liabilities for actions taken or not taken to protect the interests of noteholders. (Indenture § 7.1(a).) Thus, in order to state a claim for breach of the indenture as a noteholder, Willes must plead that (1) an Event of Default occurred and was continuing as defined by the agreement; (2) Wells Fargo was aware of the continuance of an Event of Default; and (3) Wells Fargo then breached its duty of care by its actions or failure to act.[2]

Willes's complaint easily satisfies the first requirement: he cites five KH SEC filings, beginning in April 2009, that report various amounts of at least $1.75 million of interest and

---

[2] Wells Fargo erroneously states that Willes also must plead specific damages. While Willes does assert that Wells Fargo's inaction adversely affected the value of his Series 4 Notes, "[i]n a breach of contract action, the plaintiff need not prove damages resulting from the breach." *Ambling Management Co. v. Univ. View Partners, LLC*, 581 F. Supp. 2d 706, 718 (D. Md. 2008) ("A plaintiff may recover nominal damages, even though he has not shown actual damages.") (citing *Taylor v. Nations Bank, N.A.*, 776 A.2d 645, 651 (Md. 2001); *Hooton v. Kenneth B. Mumaw Plumbing & Heating Co., Inc.*, 318 A.2d 514, 518 (Md. 1974)).

principal payments that were more than 30 days late. (Am. Compl. ¶¶ 22-26.) Section 6.1 of the

indenture defines an "Event of Default" as, among other possibilities, "defaults in the payment of

interest" or "defaults in the payment of the principal of any Security when the same becomes due

and payable at maturity . . . and the Default continues for a period of 30 days . . ." Wells Fargo's

heightened duties under the indenture are only triggered by "the continuance of an Event of

Default." (Indenture § 7.1(b).) Taking the SEC filings as accurate, there were at least five

instances where an Event of Default was continuing—the dates on which KH reported to the

SEC that it was past the 30 day grace period in principal and loan payments.

Wells Fargo argues that Willes's complaint fails to plead a continuing Event of Default

because he does not address whether the late payments had been cured or waived. First, even if,

after making its SEC filings, KH had immediately cured the defaults by paying the due amounts,

an Event of Default was continuing under the indenture up until that moment. The same is true if

a majority of noteholders had waived the defaults immediately following the SEC filings. Thus,

the complaint sufficiently pleads the existence of uncured and unwaived Events of Default. And,

Willes was under no obligation to raise the possibility that the Events of Default were cured or

waived. On its face, his complaint contains multiple, plausible assertions that Events of Default

were continuing well before Wells Fargo took action to address them. Whether or not these

defaults were actually being cured or waived is a factual dispute that cannot be resolved in this

motion.

The same is true with regard to whether Wells Fargo had notice that Events of Default

were occurring. Wells Fargo argues that Willes has failed to allege "the date when Wells Fargo

received notice of an Event of Default, the manner of the notice, or who received it," and that

Willes instead relies on "insufficient, broad-brush generalizations." (Def.'s Mem., ECF No. 31,

at 16.) These arguments are not persuasive. Willes's amended complaint not only alleges that Wells Fargo was notified of the defaults because it received specific, dated SEC filings from KH; the complaint also alleges that KH directly informed Wells Fargo of its defaults. (*See* Am. Compl. ¶¶ 22-26.) The complaint repeatedly states that "KH funding informed Wells Fargo of [the nonpayment of principal and interest]." (*Id.*) Taken as true, these statements indicate that Wells Fargo was notified of Events of Default for months prior to giving notice to Series 4 holders or accelerating the notes.

As to wrongdoing, Willes's complaint describes two failures to act on the part of Wells Fargo that plausibly state a claim for breach of its duties under the indenture. First, Wells Fargo allegedly failed to give notice of Events of Default to Series 4 holders as required by § 7.5 of the indenture. (Am. Compl. ¶ 15.) The indenture states that Wells Fargo was under a duty to give notice to Series 4 Noteholders "within 90 days" after an Event of Default occurs, if it is continuing. (Indenture § 7.5.) Wells Fargo argues that Willes has failed to adequately plead a breach of this provision because his amended complaint does not expressly state that any Event of Default was "continuing for *ninety* days." (Def.'s Reply, ECF No. 39, at 3.) However, Willes does plead that Events of Default began at least as early as December 31, 2008, and defaults continued for a year before Wells Fargo gave noteholders notice. (Am. Compl. ¶¶ 23-29.) While Willes does not provide a specific example of a default that lasted for at least 90 days, it is certainly plausible that Wells Fargo breached this provision, given that millions of dollars in defaults were occurring and continuing throughout the year. (*Id.*) Regardless, § 7.5 of the indenture mandates that Wells Fargo provide notice "within" 90 days; it does not require Wells Fargo to actually wait so long before alerting noteholders. Thus, Willes has stated a claim for failure to give timely notice. *See In re Bankers Trust Co.*, 450 F.3d 121, 129 (2d Cir. 2006)

6

(suggesting that breach of a duty to give noteholders notice can be a basis of indenture trustee liability).

Second, the amended complaint alleges that Wells Fargo breached its duty of care under the indenture by failing to accelerate the notes until February 5, 2010, almost a year after Willes alleges Wells Fargo first became aware of continuing Events of Default. (Am. Compl. ¶¶ 23, 30.) Wells Fargo attempts to litigate the merits of this claim by arguing that individual noteholders never exercised their own power to accelerate, suggesting that it would have been imprudent for Wells Fargo to do so. Whether Wells Fargo breached its duty of care is a factual question that cannot be resolved in this motion. There is, however, a plausible ground for Willes's claim.

Finally, Willes's amended complaint will not be dismissed for failing to plead specific facts that show Wells Fargo's actions were not taken in good faith. Section 7.1(c)(2) of the indenture provides that Wells Fargo "shall not be liable for any error of judgment made in good faith." The TIA itself provides that all indentures "shall automatically be deemed . . . to contain provisions protecting the indenture trustee from liability for any error of judgment made in good faith by a responsible officer . . ." 15 U.S.C. § 77ooo(d)(2). Wells Fargo contends that these provisions place a burden on the party seeking indenture trustee liability to plead facts that show a lack of good faith and that Willes's complaint is, at most, conclusory in this regard. In this context, however, good faith more likely constitutes an affirmative defense. *See CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 473 n.26 (S.D.N.Y. 2010) (construing a nearly identical provision in a trust agreement as an affirmative defense).

Eventually, the good faith provision may defeat Willes's claims that Wells Fargo breached the indenture if Wells Fargo shows it *consciously* decided not to accelerate prior to February 2010 or provide timely notice. If these were a "judgment[s]" made by an officer or

officers of Wells Fargo, then they may be entitled to a presumption that they were made in good

faith, regardless of their wisdom. *See Speers Sand & Clay Works, Inc. v. American Trust Co.*, 20

F.2d 333, 335 (4th  Cir. 1927).

But, Willes does not merely allege that Wells Fargo made an unwise or imprudent

decision in carrying out its duties under the indenture; rather, he alleges that Wells Fargo failed

to address KH's defaults at all. While it is possible that Wells Fargo's omissions were choices

entitled to protection under the "good faith" language of the indenture and TIA, it is equally

plausible that they were not "error[s] in judgment" and that Wells Fargo simply ignored KH's

defaults. Dismissing Willes's claims on good faith grounds would at least require the court to

find, as fact, that an officer or officers of Wells Fargo assessed KH's defaults and consciously

decided to forgo action. *Cf. CFIP Master Fund, Ltd.*, 738 F. Supp. 2d at 473-74 (granting

summary judgment that defendant trustee acted in good faith after finding that "[t]he undisputed

record shows that . . . [the defendant] made the decision" to take the allegedly negligent action

after "conferring with outside counsel" and "asking . . . for further explanation"). At this stage,

such a factual finding would be inappropriate.

## CONCLUSION

For the forgoing reasons, Wells Fargo's motion to dismiss will be denied.

A separate order follows.


_____11/2/12_____                              _____/s/_____
Date                                             Catherine C. Blake
                                                 United States District Judge

8